IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40304-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MASON TYLER PILLING, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — A jury found Mason Pilling guilty of second degree attempted rape of a child and communication with a minor for immoral purposes. Pilling was sentenced to 84 months to life imprisonment, to be followed by 36 months of community custody. He was also assessed multiple community custody conditions.

Pilling appeals from his judgment and sentence, alleging (1) his convictions violate double jeopardy, and (2) one of his community custody conditions is not sufficiently crime related and should be stricken.

We disagree and affirm.

## FACTS

*Background of facts as testified to at trial*

In August 2022, the Washington State Patrol Missing and Exploited Children Task

Force[1] was conducting a "Net Nanny" operation in Moses Lake, Washington. 2 Rep. of Proc. (RP) (Dec. 7, 2023) at 347. The task force had created a profile on "the Grindr application" with the name "Darrin." 2 RP (Dec. 7, 2023) at 283. "Grindr is an application . . . used for hookups in the LGBTQ [lesbian, gay, bisexual, transgender, or queer] community, specifically male hookups." 2 RP (Dec. 7, 2023) at 281. Conversations between Mason Pilling and "Darrin" occurred on Grindr, as well as another messaging platform called "Kik," in addition to text messaging. 2 RP (Dec. 7, 2023) at 297-98.

Detective sergeant Jake Klein of the Washington State Patrol, who was communicating as the fictitious 13-year-old boy, "Darrin," testified at trial that Pilling engaged in lengthy sexually explicit conversations with "Darrin," despite "Darrin" telling Pilling he was "13 [years old] but mature."[2] 2 RP (Dec. 7, 2023) at 302. Their conversations resulted in Pilling arranging to meet "Darrin" for sex:

---

[1] This task force "spearheads multi-agency operations, including federal, state, and local law enforcement, aimed at finding and recovering sexually exploited children and apprehending child predators." WASH. STATE PATROL, MISSING & EXPLOITED CHILD. TASK FORCE, https://wsp.wa.gov/crime/mectf/ (last visited Feb. 9, 2026); *see also* RCW 13.60.100-.110.

[2] The name "Darrin" was used initially on Grindr. Later, the task force used the name "Jake" on a different application. *See* 2 RP (Dec. 7, 2023) at 308. Although the names were different, Pilling treated each persona as the same individual. For readability purposes, we refer to the personas collectively as "Darrin."

> "PILLING: How are you man? If you're on or near the base we should totally kick it sometime.
> "KLEIN: Dude I'm lookin 4 rn lol.
> "PILLING: Ahh okay, you hosting?
> "KLEIN: Ya.
> "PILLING: Oh nice, I could probably walk over.
> "KLEIN: Cool dude.
> "U cool that im young?
> "PILLING: Yeah that's cool. Love younger (with a wink, tongue out emoji) how young?
> "KLEIN: 13 but mature and discrete.
> "PILLING: Ahh cool. I'd be down just delete that message.
> "KLEIN: Ya dude.
> "Wanna txt?

2 RP (Dec. 7, 2023) at 302. Following their messaging exchanges, Pilling sent sexually explicit photos and described his anatomy, with each conversation remaining sexual in nature. "Darrin" asked Pilling when he could meet, with Pilling responding, "I can come over [right now] if you want. 'Get this hole owned by a young twink." 2 RP (Dec. 7, 2023) at 309. In anticipation of the meeting, Pilling told "Darrin" he was "freshly lubed with Vaseline so you can just shove it in no matter how big." 2 RP (Dec. 7, 2023) at 311-12.

As initially arranged between the two, Pilling first went to a gas station. Pilling was then asked by "Darrin" to meet him down the road across from a middle school. When Pilling arrived at the location across from the school, he was arrested. Klein testified that the task force uses multiple locations for meetings because a second location

provides an opportunity for the perpetrator to change their mind about following through with the meeting and it also gives the task force more opportunity for surveillance. Klein noted that some people will "chat and talk about and fantasize about stuff," while not taking a substantial step toward committing the act. 2 RP (Dec. 7, 2023) at 322.

Another member of the task force, Grant County Sheriff's Office Detective Jacob Fisher, testified that after Pilling was arrested, he collected the shorts Pilling was wearing, with Fisher photographing "what appeared to be a greasy spot . . . around the center of the buttocks area." 4 RP (Dec. 8, 2023) at 430-31.

Pilling testified during his case-in-chief. On direct examination, he told the jury that he did not believe that "Darrin" was actually a 13-year-old boy. When shown photos of "Darrin" utilized by the task force, Pilling said "Darrin" was "most likely 15, but possibly 16 or 17, maybe 18." 4 RP (Dec. 11, 2023) at 484. On cross-examination, Pilling asserted that he did not pre-lube his anus for "Darrin," but rather a different person he was going to meet prior to "Darrin."

A jury found Pilling guilty of attempted rape of a child in the second degree and communication with a minor for immoral purposes. The trial court subsequently sentenced Pilling to a concurrent term of imprisonment of 84 months to life on the second degree attempted rape of a child conviction and 12 months on the communication with a minor for immoral purposes conviction, to be followed by a 36-month term of

community custody. The trial court also imposed multiple community custody

conditions.

Pilling now appeals.

ANALYSIS

1.    *Pilling's convictions for attempted second degree rape of a child and communication with a minor for immoral purposes do not violate double jeopardy*

Pilling argues his convictions for attempted second degree rape of a child and

communication with a minor for immoral purposes violate double jeopardy because the

State relied on the same evidence, the electronic messages between Pilling and "Darrin,"

to prove Pilling both took a substantial step on the attempted rape of a child charge and

communicated with a minor for immoral purposes. Pilling asserts that "as proven, these

offenses are the same in law and fact." Br. of Appellant at 2.

Pilling did not raise the double jeopardy argument with the trial court, but a

constitutional challenge may be raised for the first time on appeal. *State v. Adel*, 136

Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

The principle of double jeopardy is that "[n]o person shall . . . be twice put in

jeopardy for the same offense." WASH. CONST. art. I, § 9; U.S. CONST. amend. V ("[N]or

shall any person be subject for the same offence to be twice put in double jeopardy.").

"Double jeopardy is violated if, but only if, both convictions punish the same offense."

*State v. Ray*, 5 Wn.3d 350, 362, 575 P.3d 321 (2025). Washington applies the "'same evidence' rule,"[3] to ascertain whether each offense includes an element not included in the other and requires proof of a fact the other does not. *State v. Bell*, 26 Wn. App. 2d 821, 839, 529 P.3d 448 (2023). When a defendant is convicted of multiple offenses based on the same act or transaction, "we must determine whether [the] convictions . . . both punish the *same* offense or, instead, punish two *different* offenses." *Ray*, 5 Wn.3d at 362.

When multiple convictions arise from different statutory provisions, a defendant has the burden to establish the convictions are identical in fact and in law in the context of a four-part double jeopardy analysis. *Ray*, 5 Wn.3d at 362-65. "If they are not the same, we must presume separate punishment for [the] convictions are authorized, absent 'a clear indication of contrary legislative intent.'" *Id*. at 365 (quoting *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155 (1995)). Factual overlap alone does not trigger double jeopardy. *See id*. at 368.

The statutes applicable to Pilling's convictions are not explicit as to the legislature's intent to authorize cumulative punishment for attempted rape of a child in the second degree and communicating with a minor for immoral purposes. *See* RCW 9A.44.076; RCW 9A.28.020; RCW 9.68A.090, .001. Absent clear legislative intent

---

[3] "The 'same evidence' rule is sometimes referred to as the 'same elements' test.'" *State v. Womac*, 160 Wn.2d 643, 652, 160 P.3d 40 (2007).

to the contrary, we apply the *Blockburger*[4] test, which focuses on the statutory elements

of the offenses charged, not the evidence presented at trial. *Ray*, 5 Wn.3d at 368 (citing

*Grady v. Corbin*, 495 U.S. 508, 521 n.12, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990),

*overruled on other grounds by United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2894, 125

L. Ed. 2d 556 (1993) (partial plurality opinion). "This focus on the statutory elements of

each offense is necessary because the double jeopardy clause does not prohibit multiple

punishments based on the same *conduct* or the same *evidence.* Instead, . . . the double

jeopardy clause prohibits multiple punishments for the same *offense*." *Id*.

Pilling contends his communications with "Darrin" formed the factual basis for

both convictions but argues the "substantial step" element of attempt was proven solely

through the same sexually explicit messages that established proof for the communication

offense.

Attempted rape of a child in the second degree requires proof that the defendant

(1) intended to commit rape of a child in the second degree, and (2) took a substantial

step toward that goal. RCW 9A.44.076(1); RCW 9A.28.020(1). A substantial step is

an action that is strongly corroborative of the defendant's criminal purpose. *State v.

Johnson*, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). "Mere preparation to commit a

crime is not an attempt." *State v. Wilson*, 1 Wn. App. 2d 73, 83, 404 P.3d 76 (2017).

---

[4] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

In online sting cases, traveling to an arranged meeting place constitutes a substantial step. *See State v. Wilson*, 158 Wn. App. 305, 317-18, 242 P.3d 19 (2010); *State v. Sivins*, 138 Wn. App. 52, 64, 155 P.3d 982 (2007).

In contrast, communication with a minor for immoral purposes criminalizes knowingly communicating with a minor, or someone the defendant believed to be a minor, for the sexual exploitation or abuse of the minor. RCW 9.68A.090(2), .001. The statute's focus is on the communicative act itself, as it is intended to prohibit "communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993).

Each statute here demands proof that the other does not. Attempted second degree rape of a child requires specific intent to achieve sexual intercourse plus a substantial step toward commission of that crime. In closing argument, the State reviewed for the jury the evidence it believed supported a finding that Pilling took a substantial step to commit rape of a child: (1) Pilling's communication with a fictitious 13-year-old and his inquiry of whether "Darrin" would be "hosting," i.e. welcoming, (2) sending explicit photographs, (3) applying lubrication, (4) getting in his car and driving to the first agreed upon location, and (5) then driving to a second agreed upon location. This evidence is not necessary to achieve a conviction for communication with a minor for immoral purposes.

Conversely, the communication charge demands proof of a minor's involvement in the conversation, and a communication medium. Neither one of these elements are essential to the attempted rape charge. The evidentiary overlap in Pilling's messaging does not alter this. *Blockburger* turns on statutory elements, not facts produced at trial. *See Ray*, 5 Wn.3d at 368 (Evidence may overlap without rendering offenses identical in law.)

With offenses that are distinct under the *Blockburger* test, a presumption of legislative authorization attaches. *Ray*, 5 Wn.3d at 367-68. Pilling offers no evidence of contrary intent. RCW 9.68A.090 was enacted to deter predatory grooming of a minor independent of any ultimate offense. *See McNallie*, 120 Wn.2d at 933. RCW 9A.28.020(1) permits punishment of anticipatory offenses of any Washington crime, in this case rape of a child, which is a harm beyond communicating with a minor for immoral purposes. The offenses are neither the same in fact nor in law. Cumulative punishment aligns with legislature intent. Pilling's two convictions do not violate double jeopardy.

Citing to *State v. Weber*, 159 Wn.2d 252, 269, 149 P.3d 646 (2006), Pilling also contends that because his conviction for communication with a minor for immoral purposes "carries a seriousness level of three, and a much shorter standard range sentence, it is a lesser offense and must be dismissed." Appellant's Opening Br. at 22. We disagree. The trial court correctly treated Pilling's two convictions as separate

criminal conduct. Pilling's communicative intent to solicit a  discussion of a sexual nature with "Darrin" evolved into the distinct and separate purpose of physical consummation of what was being discussed.

2.     *The condition prohibiting Pilling from accessing or having accounts related to online dating applications is sufficiently crime-related*

Pilling argues the trial court abused its discretion when it imposed discretionary community custody condition 14. At sentencing, the trial court edited the State's proposed condition 14, with the ordered condition reading: "The defendant shall not access or have active accounts relating to on-line dating applications or hookup sites."[5] CP at 369; *see also* 1 RP (Mar. 12, 2024) at 25.

Pilling argues this "imposed a blanket restriction on Mr. Pilling's ability to access dating applications. The condition is not limited to communicating with a minor. This condition must be sensitively imposed because it affects Mr. Pilling's freedom of association." Appellant's Opening Br. at 2. To support his contention, Pilling argues that his "use of Grindr was mostly appropriate" and argues "it was law enforcement who improperly used that application when it posed as a 13-year-old." Appellant's Opening

---

[5] The condition as proposed by the State read, "The defendant shall not access or have any active social media accounts including but not limited to Facebook, Twitter, Snapchat, chat rooms, or on-line dating applications." CP at 303. The court explained to the parties that it edited the condition to make it "much more specific to the allegations in this case." 1 RP (Mar. 12, 2024) at 25.

10

Br. at 28. Pilling further argues that the statutes applicable to Pilling's convictions "deal with the inappropriate language and conduct involving minors, not a misuse of a dating application." Appellant's Opening Br. at 28.

We review community custody conditions for abuse of discretion and will disturb a condition only if it is manifestly unreasonable. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

A sentencing court has discretion to impose "crime-related prohibitions" that directly relate to the circumstances of the offense. RCW 9.94A.505(9),.703(3)(f). A prohibition is crime-related if "it is reasonably related to the crime, the offender's risk of reoffense, and the protection of public safety." *In re Pers. Restraint of Winton*, 196 Wn.2d 270, 278, 474 P.3d 532 (2020). Conditions that interfere with a fundamental right "must be 'sensitively imposed'" and narrowly drawn "so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 267, 374, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Here, Pilling initiated contact on Grindr, a geosocial dating and hookup application, with an undercover officer posing as a 13-year-old boy. Over more than one messaging platform Pilling sent sexually explicit images and messages, arranged an in-person sexual encounter, and traveled to the designated location while texting that

11

he was "freshly lubed" for the meet up. 2 RP (Dec. 7, 2023) at 311-12. The facts are that Pilling's offense was entirely facilitated by the use of online dating/hookup applications, and text messaging. Prohibiting Pilling from accessing or maintaining active profiles on such platforms directly addresses the mechanism of his crime and reduces the risk of reoffense by eliminating the digital gateway Pilling exploited.

Here, the condition is confined to the specific category of applications Pilling weaponized—dating and hookup sites—leaving him free to use the internet for employment, education, banking, and countless other lawful purposes. When a conviction involves sexual activities with a minor, restricting the offender's opportunity to contact minors is both related to the crime and reasonable for the protection of the public. *State v. Julian*, 102 Wn. App. 296, 306, 9 P.3d 851 (2000).

Pilling's associational arguments are unavailing. The First Amendment to the United States Constitution protects a person's freedom of association, including intimate association, but these rights may be limited when sensitively imposed and when reasonably necessary to accomplish the essential needs of the State. *See State v. Frederick*, 20 Wn. App. 2d 890, 909-10, 506 P.3d 690 (2022). Community custody condition 14 does not bar Pilling from dating or associating with consenting adults; it merely requires him to do so through means other than the location-based platforms

he abused. Any incidental burden to Pilling is outweighed by the State's compelling interest in preventing contact with minors.

Finally, Pilling's request to strike the condition is unwarranted. The sentencing court retains authority to clarify or narrow conditions if monitoring reveals practical difficulties. *State v. Broadaway*, 133 Wn.2d 118, 135-36, 942 P.2d 363 (1997).

3.      *Statement of additional grounds for review (SAG)*

Pilling asserts four additional grounds for review, arguing that: (1) he was deprived of his right to trial by an impartial jury, (2) the guilty verdict was reached because of the prosecutor's inflammatory statements and inherent juror biases regardless of the entrapment defense being proved beyond a reasonable doubt, (3) misleading evidence was shown at trial relative to the "oily stain" on Pilling's shorts, SAG at 7-8, and (4) his Fifth and Six Amendment rights were violated.

### 3.1    *Impartial jury*

Pilling claims that of the twelve seated jurors, six of those stated they had close friends or family members who work in law enforcement, and one juror indicated they had a close friend or family member who had been affected by a crime similar to the crime for which he was being prosecuted.

It is true that some jurors during voir dire stated they have a close friend or family member who was employed by or volunteered for law enforcement agencies. The trial

court asked those jurors if the relationships would unduly influence their consideration of Pilling's case, or if they would be more likely to give credibility to an officer's testimony solely because the witness was an officer. The jurors who indicated they may be influenced by their relationships were removed for cause. It is also true that several jurors indicated they had personal involvement in a case or incident involving communication with a minor for immoral purposes or allegations of rape of a child. Again, the trial court discussed these issues with the jurors and removed potentially biased jurors for cause. We can discern no error in the trial court's empaneling of the jury.

Within this additional ground, Pilling also argues that the prosecution appealed to the emotions of the jury, which led to juror bias. The defendant bears the burden of proving the prosecution's conduct was both improper and prejudicial. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). No objection was made at trial to the comments attributed to the prosecutor by Pilling, and he fails to establish prejudice on review.

### 3.2    Entrapment defense

Pilling argues jury bias was obvious because it reached a guilty verdict despite defense counsel proving entrapment beyond a reasonable doubt. Here, the jury was instructed on Pilling's entrapment defense. As held in Pilling's first additional ground for review, there was no indication of jury bias. As the sole judges of credibility, the jury was not persuaded by the entrapment defense.

### 3.3    Misleading evidence

Pilling argues that the State presented misleading evidence when Grant County Sheriff's Office Detective Jacob Fisher presented the shorts Pilling was wearing on the night of his arrest and claimed that although the officer testified there was an oily stain on his shorts, at trial an oily stain could not be seen. Pilling additionally cites that there was no testing of the shorts to verify the stain was Vaseline. At trial, officers testified they observed an oily spot on Pilling's shorts. With this observation, they photographed the shorts and took them as evidence. In his testimony, Pilling admitted to using lubrication, but claimed this was done earlier on the same day of his arrest. Whether or not the stain was present at the time of trial, the evidence was not misleading. If a stain was not present at trial, then this was arguably favorable to Pilling's defense, making the officer's testimony appear less credible.

### 3.4 Fifth and Sixth Amendment rights

Pilling argues law enforcement violated his Fifth and Sixth Amendment rights when "aggressively extracting a statement" from him on the night of his arrest. SAG at 8-9. He claims that although the trial court suppressed his statements, his right to effective counsel was violated because his attorney should have argued the case should not have gone to trial. To be entitled to relief, Pilling must show both that (1) defense counsel's representation was deficient and (2) the deficient representation was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If one prong of the *Strickland* test fails, then this court need not address the remaining prong. *State v. Crow*, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Prior to the start of trial, Pilling filed a motion to suppress post-arrest statements made to law enforcement. *See* CP at 26. The trial court suppressed a majority of Pilling's statements. CP at 142-43. Pilling argues that if he had effective counsel, the guilty verdict would have been set aside due to violations of his Fifth and Sixth Amendment rights. Despite his assertion, Pilling fails to show ineffective assistance of counsel. The proper

remedy for post-*Miranda*[6] incriminating statements is suppression of the statements.

*See United States v. Perez-Lopez*, 348 F.3d 839, 849 (9th Cir. 2003). Since his counsel

properly achieved the suppression of his statements, Pilling's counsel was not deficient.

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).